IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAY 27 2016
DANNY L. MILLER, CLERK
BY_____DEPUTY CLERK

IN RE:    SLABBED NEW MEDIA, LLC      CHAPTER 11
Debtor      Case No. 15-50963

**Objection to Plan of Reorganization; Motion Under Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 107(b)(2) and Federal Rule of Bankruptcy Procedure 9018**

Charles Leary and Vaughn Perret are listed as creditors of Slabbed New Media, LLC. in this Chapter 11 bankruptcy proceeding. Appearing here *pro se*, Charles Leary, Ph.D. and Vaughn Perret, J.D. object to the plan of reorganization filed by the debtor. As listed creditors are proceeding on this motion *pro se,* the allegations in this pleading should be liberally construed. See e.g. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). This bankruptcy filing is a fraud, done in bad faith, and with ulterior motives, making it an abuse of this Court's process.

There are at least nine bases for objecting and for filing this motion:
1. The vast majority of the purported debts listed by Douglas Handshoe in sworn documents as debts of his sole-proprietor limited liability company are in fact his personal debts that resulted from his personal Internet activities that were not in the best interests of the company, were *ultra vires* to his official capacity, and were not for a legitimate business purpose.
2. With regards to any existing or pendant judgment debts, the money judgments are the result of intentional torts that are the result of acts intended to cause injury done by Mr. Handshoe personally, which are not dischargeable in bankruptcy.
3. The plan of reorganization contains *per se* defamatory and scandalous statements of (false) fact, which in turn relate back to and evidence within this very proceeding the kind of intentional torts committed by Mr. Handshoe via the Internet.
4. Mr. Handshoe has intentionally misrepresented to this Court that a $48,000 judgment debt—the major purported asset of the company--belongs to Slabbed New Media, when it does not.
5. The plan of reorganization provides no viable plan for Slabbed New Media to survive as a business concern, and its supposed future viability rests solely on vague assertions of legal claims in civil suits where Mr. Handshoe's personal liability for intentional acts do not make such legal actions subject to bankruptcy protection or discharge.
6. As evidenced by a 2012 affidavit sworn by Mr. Handdshoe, the web site slabbed.org is owned personally by Douglas Handshoe and not by the Debtor, and any transfer of the ownership of the web site in anticipation of this bankruptcy is fraudulent. Neither the domain slabbed.org nor the web site were ever referred to as assets of the debtor company until now in Debtor's plan.
7. Mr. Handshoe himself is the only purported creditor of Slabbed New Media, LLC who has filed a claim for more than $100. Without notice to other listed purported creditors, Mr. Handshoe filed papers with the Court claiming that he is owed $500,000 under an indemnification agreement that has never been produced in evidence.
8. Mr. Handshoe has intentionally used this Court and this bankruptcy proceeding to delay and stay other civil legal proceedings against him and in one case against his company, which is not

the intended purpose of Chapter 11 bankruptcy protections, and is an abuse of this Court's process. *All* other legal proceedings are against him personally for intentional acts, not against his company. He has used this shelter to continue to defame and harass.
9. The creditor listed as a single entity by Mr. Handshoe—Charles Leary, Vaughn Perret, and Trout Point Lodge—is not a single entity but rather three, each owning its own judgment debt against Mr. Handshoe. Listing of the debt as being owed to a single entity was and is not proper, and notice to each of the judgment creditors was also not proper or ever effected.

**Debts Owed by Douglas Handshoe Not Slabbed New Media, LLC**

Under cross examination when giving sworn testimony to the U.S. Trustee, Mr. Handshoe admitted that nearly all of the debts listed by him as belonging to Slabbed New Media were in fact his personal debts. This includes the debts owed individually to Charles Leary, Vaughn Perret, and Trout Point Lodge resulting from a 2012 Court Order for CAN $427,000 from Nova Scotia Supreme Court (CAN $425,000 in damages; $2000 in costs) (cf. recording of testimony, U.S. Trustee's Office). In yet, debtor continues to represent to this Court that a U.S. "$425,000" debt is owed by Slabbed New Media, LLC. What the US $425,000 consists of is unclear, but no combination of judgment debts owed by Handshoe to Leary, Perret, and Trout Point or exchange rates result in such a figure. Mr. Handshoe and the LLC are separate legal entities, and the assets and liabilities of the individual are separate from the assets and liabilities of the LLC. *See* Miss. Code Ann. §79-29-311; *In re Chang*, Bankr. S.D. Miss., Case No. 10-51012 NPO (Dk#123); *In re Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006), aff'd, 266 F. App'x 272 (4th Cir. 2008); *In re Desmond*, 316 B.R. 593 (Bankr. D.N.H. 2004).

In addition, debts purportedly owed to Mr. Handshoe's personal attorneys Connie Sue Montogmery and Jack Etherton Truitt result from invoices they made out to Douglas Handshoe personally, for representing him personally, not Slabbed New Media, LLC.

**Section 523(a)(6) of the Bankruptcy Code**

For his own purposes, Mr. Handshoe seeks to conflate and confuse his personal intentional actions with the purported business activities of his LLC. Yet Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not

dischargeable. 11 U. S. C. § 523(a)(6). A "willful" injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). To establish an intentional injury, the creditor must establish "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir.1998). A "malicious" act is as an act done with the actual intent to cause injury. *In re Miller*, 156 F.3d at 606.

The relief sought by debtor from potential or existing judgments for Internet defamation, harassment, cyber-bullying, and invasion of privacy by its member and sole operating mind Mr. Handshoe are not dischargeable. § 523(a)(6) has been applied in this Circuit to a case involving injurious Internet publications. "Defendant made defamatory statements about Plaintiff which Defendant knew at the time to be false, and that Defendant made those statements with the specific intent to cause injury" (*IN RE DO*, No. 10-13546-CAG (Bankr. W.D. Tex. Apr. 9, 2013)). In *Trout Point Lodge Ltd. v. Handshoe*, 2012 NSSC 245, a now oft-cited case on Internet defamation damages that Debtor has put at issue in this proceeding, Justice Suzanne Hood found Mr. Handshoe had a subjective intention to cause harm via his copious false Internet publications. "The defendant knows that the original story linking Mr. Broussard with Trout Point Lodge has been retracted and an apology published. In the face of this, the defamatory comments continued. Mr. Handshoe has refused to apologize or retract and, in fact, has republished the original statements and says they are true." In Canadian jurisprudence, aggravated damages for defamation are only awarded when there exists actual *evidence* of "additional harm caused to the plaintiff's feelings by the defendant's outrageous and malicious conduct." The Court found Mr. Handshoe was involved in intentionally "misrepresenting facts" and found "outrageous conduct in the face of true facts about the plaintiffs" in awarding aggravated damages based on an evidentiary hearing; *Trout Point Lodge Ltd. v. Handshoe*, 2012 NSSC 245.

A second justice of Nova Scotia Supreme Court found in a 2014 decision: "The actions and

words of Mr. Handshoe since the first application are clearly defamatory. Furthermore they have no relationship to fact or truth. They amount to nothing more than a misguided attempt to destroy Mr. Leary, Mr. Perret and Trout Point Lodge" *Trout Point Lodge Ltd. v. Handshoe*, 2014 NSSC 62.

The U.S. District Court for the Southern District of Mississippi found Mr. Handshoe engaged in "an internet campaign to damage Perret and Leary. Handshoe has published numerous entries on 'Slabbed' about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist and homophobic" (Trout Point Lodge et. al. v. Handshoe, Case 1:12-cv-00090-LG-JMR Document 35 Filed 12/19/12 Page 4 of 19). Whether or not the first Nova Scotia court used U.S. standards of assessing defamation, this was undeniably a personal campaign intended to cause injury by publishing scandalous material. Notably, ruling against Mr. Handshoe's arguments, Judge Guirola specifically found that Slabbed New Media was not a party in that lawsuit: "Handshoe's pleadings refer to 'Slabbed New Media, LLC' as a defendant, but Doug Handshoe is the only named defendant. Slabbed New Media, LLC is not a party to this action." Mr. Handshoe's knows his attempt to assert to this Court that Slabbed New Media has anything to do with litigation between himself and Leary, Perret, and Trout Point is untrue and that the issue is *res judicata*.

In addition, in the *Yount v. Handshoe* litigation in Louisiana, raised by Debtor, the Louisiana Fifth Circuit Court of Appeal has already found that Mr. Handshoe was engaged in conduct that he intended to cause injury. The Court also concluded that Mr. Handshoe's Internet publications about Mr. Yount and his minor son, including publication of a pornographic image, were not matters of public interest. The unanimous three-judge panel found Mr. Handshoe had intentionally published information from Mr. Yount's divorce case online and that "there may be legal consequences should that [...] information be published and distributed as clickbait to millions of people on the internet in a manner that defames or invades the privacy of another" (*Yount v. Handshoe*, 171 So. 3d 381 (La. Ct. App. 2015)). Notably, Mr. Handshoe's co-defendant Jack Etherton Truitt also lost on appeal regarding his identical special motion to strike (*Yount v. Handshoe*, No. 15-CA-376 (La. Ct. App. Nov. 19, 2015)),

and that decision was appealed to the Louisiana Supreme Court, where the writ was denied by a unanimous panel.

**Scandalous & Defamatory Material**

The reorganization plan contains baseless and totally unsupported scandalous and *per se* actionable statements regarding Mr. Perret, Esq., Dr. Leary, and others. 11 U.S.C. § 107(b)(2) provides "On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may... (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Federal Rule of Bankruptcy Procedure 9018 provides the procedure for invoking the court's power under 11 U.S.C. § 107.

Mr. Handshoe and his attorneys unequivocally and publicly state Daniel Abel, Charles Leary, and Vaughn Perret's "participation in a bribery and money laundering scheme." The pleading also refers to them as having filed "vexatious litigations" and of being involved in "'Nova Scotia Enterprise's' bribery and money laundering enterprise." Yet there is no basis whatsoever for making such accusations of felonious criminal conduct in Debtor's federal pleadings. Purported creditors of Slabbed New Media Perret and Leary flatly deny such frivolous and damaging allegations (cf. affidavits of Leary & Perret).

"Mississippi courts appear to have followed the general common law of defamation, stating that malice is the gist of an action for libel or slander, *see, e.g., Tipps Tool Co. v. Holifield, 218 Miss. 670, 67 So.2d 609 (1953),* but that malice is presumed where the words are actionable *per se, see, e.g., Travis v. Hunt, 224 Miss. 193, 79 So.2d 734 (1955).*" *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238 (5th Cir. 1980). Mr. Handshoe's words and criminal allegations, filed with this Court without any basis whatsoever, are actionable *per se* in this State.

> It is well-settled that to charge a person with theft or larceny is actionable per se. 33 Am. Jur., Libel and Slander, Sec. 31; Prosser, Torts (1941) pp. 798-801. (Hn 4) And in such cases general damages need not be pleaded or proved, but are presumed to result. (Hn 5) Moreover, malice is

presumed as a matter of law where the words spoken are actionable per se. 33 Am. Jur., Libel and Slander, Secs. 5, 266. Cf. Valley Dry Goods Company v. Buford, 114 Miss. 414, 427, 75 So. 252 (1917); Lemonis v. Hogue, 213 Miss. 775, 57 So.2d 865 (1952).
*TRAVIS, ET AL. v. Hunt*, 79 So. 2d 734, 224 Miss. 193 (1955).

Debtor's plan of reorganization should be struck or sealed, and as it exists based on a false defamatory pretext and theory of business viability is fundamentally unacceptable. Debtor and his attorney should also be held accountable for their false, injurious, and frivolous statements under Miss.Code Ann. § 11-55-5(1), the *Mississippi Litigation Accountability Act*. Mr. Handshoe has now publicly dragged his "internet campaign to damage" into this Honorable Court.

**The $48,000 Judgment Debt Does Not Belong to Slabbed New Media**

Debtor has intentionally misrepresented that a $48,000 judgement debt ordered by Judge Guirola in 2013 in Case 1:12-cv-00090-LG-JMR belongs to Slabbed New Media. There is no basis for this assertion, and all evidence known to Perret and Leary points to the contrary. As already noted above, Judge Guirola found in that case: "Slabbed New Media, LLC is not a party to this action" and was thus not recipient of the judgment debt. In addition, in 2014, Mr. Handshoe personally assigned that debt in a written, signed, and notarized instrument to Jack E. Truitt and the Truitt Law Firm, LLC. Mr. Truitt in turn is currently representing to courts in Louisiana that he and his law firm own the debt (see Exhibit "A" Assignment of Rights & Claims; Exhibit "B" Petition for Damages; Exhibit "C" letter and Answer to Petition, Reconventional Demand).

Mr. Truitt accepted his client Handshoe's written assignment to him of the $48,000 judgment debt on March 5, 2014, three weeks after the Nova Scotia Supreme Court rendered a second judgment for $180,000 CAN against Handshoe (cf. Trout Point Lodge Ltd. v. Handshoe, 2014 NSSC 62), a foreign judgment the enforcement of which Handshoe improperly removed to the U.S. District Court for the Southern District of Mississippi (cf. Perret v. Handshoe 1:2014-cv-00241). The transfer document was a legal document notarized in Mississippi, captioned for filing in a Louisiana court, evidencing a legal contract of substantial value when Handshoe signed it. Any subsequent agreement or

"rescission" would be subject to the Mississippi Statute of Frauds.

This makes false not only Debtor's representation to this Court that Slabbed New Media owns the debt, but also that Mr. Truitt, as a purported creditor, is owed $48,000, as that debt has already been satisfied by the notarized transfer.

**Debtor Provides No Business Plan; Purported "Claim Resolution" Involving Yount & Abel Not Dischargeable**

Debtor is purportedly in the business of Internet publication for profit via the domain slabbed.org. However, Debtor provides no plan whatsoever for making any profit through Internet publications. Instead, Debtor proposes that there may be "claim resolution" in civil legal cases against him by Chris Yount and Daniel Abel in Louisiana state courts. However, the Abel v. Handshoe case does not involve Slabbed New Media as a party.

While the Yount v. Handshoe case does name Slabbed New Media as a party, the causes of action involve Mr. Handshoe's intentional acts to cause injury to the plaintiffs, which would not be dischargeable as discussed above. The causes of action in the Abel case are the same: intentional acts of internet publication by Mr. Handshoe designed to cause injury to his targets.

And while Mr. Handshoe has repeatedly told this Court that part of the reason for delay in this case has been a search for Louisiana counsel, in fact Mr. Handshoe and the Debtor already have Louisiana counsel in both cases: Connie Sue Montgomery. This has been the case during the entire pendency of this bankruptcy proceeding.

Finally, the purported Slabbed New Media business is based on the domain slabbed.org. However, Debtor does not own the domain slabbed.org, Mr. Handshoe does personally.

On June 26, 2012, Mr. Handshoe filed a sworn affidavit with the U.S. District Court stating that he personally owned the "Internet website and blog, Slabbed.org" (cf. Exhibit "D" Affidavit of Doug Handshoe). This fact is supported by domain registration records required by ICANN (cf. affidavit of

Charles Leary). As of June 18, 2015, the "Registrant" of the domain slabbed.org was Douglas Handshoe, not Slabbed New Media, LLC. This not only confirms Mr. Handshoe's personal responsibility for injurious publications he published on slabbed.org, but also calls into question Slabbed New Media's plan of reorganization.

**Mr. Handshoe Claims Himself as $500,000 Creditor**

With no notice to the Court, the U.S. Trustee, or other claimed creditors, that he was a proposed creditor of Slabbed New Media, LLC, in October of 2015, Mr. Handshoe filed a paper with this Court claiming the company owes him $500,000 (cf. Claim filed October 14, 2015, Case no 15-50963). No justification for the claim has been filed. His claim boggles the reasonable mind.

**The Only Motivation for the Chapter 11 Filing Was Delay and to Fraudulently Manufacture Damages**

Given the above, the only reason for Mr. Handshoe to have placed his "business" Slabbed New Media into Chapter 11 bankruptcy was to use the Bankruptcy Code's automatic stay provisions to delay civil proceedings against him in Louisiana, to thwart legitimate enforcement of extant judgment debts against him personally, and to give him an illegitimate legal advantage in his own personal legal actions. In particular, Mr. Handshoe is using Slabbed New Media's bankruptcy as "proof" of his personal damages in his own civil legal proceedings in other courts in this district and in Louisiana. This is a fraud, and Mr. Handshoe has acted in bad faith.

> a court should inquire into the debtor's good faith to ensure that the Code's purposes are not being abused and that the debtor is the kind of entity within the contemplation of the Code. *See, e.g., In re G-2 Realty Trust*, 6 B.R. 549 (Bkrtcy.D. Mass.1980). *See also In re Zed, Inc.*, 20 B.R. 462, 9 B.C.D. 223 (Bkrtcy.N.D.Cal.1982). The court in *In re Bonded Mailings, Inc.*, 20 B.R. 781, 785 (Bkrtcy.E.D.N.Y.1982), cogently elucidated this concept, declaring:
>> Dismissal has generally only been granted where the filing of the case was a bad faith sham on the court. *In re Victory Construction Co.*, 9 B.R. 549, 563-65 (Bkrtcy.C.D.Cal.1981). In other words in those cases in which the company that filed never operated in business, never made a profit, was formed just to file, is losing money postpetition, has no hope of rehabilitation and has no unsecured creditors, it has been held that such a petition was filed merely to take advantage of the automatic stay, that that is an abuse of the bankruptcy court's jurisdiction and that the case should be

> dismissed. *See, e.g., In re First Lewis Road Apartments, Inc.*, 11 B.R. 576 (Bkrtcy.E.D.Va.1981);*In re Nancant, Inc.*, 8 B.R. 1005 (Bkrtcy. D.Mass.1981); *In re Dutch Flat Investment Co.*, 6 B.R. 470 (Bkrtcy.E.D.Ga. 1980). *See generally,In re Northwest Recreational Activities, Inc.*, 4 B.R. 36, 1 C.B.C.2d 713 (Bkrtcy.N.D.Ga.1980). However, where as here a once viable business supporting employees and unsecured creditors has more recently been burdened with judgments that threaten to put it out of existence, unless and until rehabilitation has been shown to be unfeasible, the bankruptcy courts are a most appropriate harbor within which to weather the storm.
>
> Other courts have declared abusive filings where the debtor filed to forestall tax liability without any need for reorganization of debt, *see In re Nancant, supra,* and where the debtor filed solely to frustrate enforcement of power of sale provisions under a deed of trust, *see In re Fast Food Properties, Ltd.,* 5 B.R. 539 (Bkrtcy.C.D.Cal. 1980). Indeed, the courts in *Century City, supra,* and *In re Coastal Cable T.V., Inc.,* 709 F.2d 762, 764-65 (1st Cir.1983), two cases cited by the Asbestos Committee, declared abusive filings, but for the specific reason that there was no real debt and no real creditors in need of a reorganization plan. Thus, in *Century City,* the court declared: "[S]uffice it to say that, absent real debt and real creditors on the part of the debtor, the basic purpose of a chapter 11 would be thwarted." 8 B.R. at 31-32.

In fact, Mr. Handshoe's attorney Connie Sue Montgomery went to the extent of falsifying the docket of New Orleans Civil District Court to reflect the false fact that Slabbed New Media, LLC was a party to that dispute, which it was not, for purposes of this bankruptcy. The only defendants in that case are Douglas Handshoe, Anne-Marie Vandenweghe, and Jack Etherton Truitt, not Slabbed New Media, LLC. The change to the docket was, one can reasonably conclude, done so that the automatic stay provisions of the Bankruptcy Code would apply in that case. Ms. Montgomery did indeed file such a stay motion with Judge Piper Griffin of New Orleans Civil District Court.

As the evidence presented by the U.S. Trustee in its motion to dismiss shows (ECF 61), Slabbed New Media is a sham business, a blogging hobby for its sole proprietor, who seeks to illegitimately wrap himself in court protection and limit liability for his intentional injurious acts. Slabbed has never made a consistent profit over a reasonable period of time, never had employees, and has never been anything but a shell for Mr. Handshoe's injurious blogging. Consider that Mr. Handshoe has personally funded his blogging for years; he "loaned" the company money so that it could hire an attorney and declare bankruptcy while at the same time claiming that the bankrupt company owes him $500,000; he also somehow gave the company a $48,000 judgment debt (which was simultaneously being

represented in Louisiana courts as being owned by attorney Jack E. Truitt) while also claiming he is owed money by his company. His sole business plan is that he now plans to "recapitalize the company and resolve its debt," however this is ludicrous as for all intents and purposes he is the only "creditor."

Mr. Handshoe should not be permitted to hide behind the LLC status of his purported company, or this bankruptcy, to shelter him from responsibility for his acts in defaming and harassing others through the Internet.

Finally, "Charles Leary, Vaughn Perret, and Trout Point Lodge" is a grouping of juridical and physical persons, and is not an entity that can be served with notice. Each person owns its own judgment debt. The true individual creditors have never received notice of this bankruptcy proceeding as required; "'each [...] must be an individual or legal entity that may accept service . . .'" *IN RE CP HALL CO.*, 506 B.R. 751 (Bankr. N.D. Ill. 2014). There was a failure of notice in this proceeding.

Respectfully, for all of the above reasons, the plan of reorganization of the Debtor must not be approved, and the U.S. Trustee's previous motions to convert to an involuntary Chapter 7 bankruptcy or to dismiss should be granted. The plan of reorganization should also be sealed for its baseless defamatory utterances; and Mr. Handshoe and his attorneys should be held accountable under the Mississippi Litigation Accountability Act and any applicable rules.

Signed this 24th day of May, 2016

Charles L. Leary        Vaughn J. Perret

CERTIFICATE OF SERVICE

I, Charles L. Leary, do hereby certify that I have served this date a true and correct copy of the above via email or facsimile to the following:

Christopher Steiskal, Office of the U.S. Trustee

Craig M Geno, Law Offices of Craig M. Geno, PLLC