U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JAN 0 7 2019

DANNY L. MILLER, CLERK
BY _____ DEPUTY CLERK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE SLABBED NEW MEDIA, LLC

MSSBKE 6:15-bk-50963

## PRO SE MOTION CONCERNING WILLFUL VIOLATION OF THE AUTOMATIC STAY OF § 362 OF THE BANKRUPTCY CODE, CAUSING DAMAGES; CONTEMPT

————

Pre-petition creditor Charles Leary  seeks relief under a strict liability private cause of action created by 11 U.S.C. 362(k) (previously 362(h)); *Pettitt v. Baker*, 876 F.2d 456 (5th Cir. 1989); *In re Collier*, 410 B.R. 464 (Bankr. E.D. Tex. 2009). Leary seeks damages, including punitive damages against Douglas Handshoe, the debtor's sole proprietor who was also a bankruptcy creditor. In addition certain orders of the United States District Court for the Southern District of Mississippi obtained by Douglas Handshoe violated the 11 U.S.C. § 362(a) bankruptcy stay. The facts are clear on the record and in judicial admissions made by Handshoe. Mr. Handshoe now argues that this matter should be before this Court and not the district court.[1] Leary first filed for the relief from the district court on October 23, 2017.

### 11 U.S.C. Sections 362(a) and (k)

Charles Leary was a creditor of Slabbed New Media, L.L.C. in the Chapter 11 bankruptcy proceeding filed at the insistence of Douglas K. Handshoe. Handshoe was also a bankruptcy creditor relating to an indemnification obligation from Slabbed to Handshoe. Simultaneously, Leary was listed in the bankruptcy as a judgment debtor of Slabbed New Media relating to a $48,000 award from the U.S. District Court for the Southern District of Mississippi in Cause No. 12-CV-90, which asset wholly belonged to Slabbed New Media at the time Handshoe commenced the L.L.C.'s bankruptcy ("$48,000

---

1   See district court case 1:15-cv-00382-HSO-JCG Document 321 Filed 12/28/18 Page 5 of 7.

attorney fee liability of Handshoe that was assigned to Slabbed along with a right to recover a judgment

for attorney fees" *In re Slabbed*, id). That judgment debt was the L.L.C.'s *primary asset* in bankruptcy.

In a brief on a Motion to Dismiss Leary's first amended counterclaims in the district court case

15-CV-382 (ECF 188), Handshoe commits one paragraph to Leary's 362(k) cause of action at page 7.

He judicially admits[2] that he personally-- "Plaintiff"-- *took "steps to collect this ['$48,000 attorney*

*fee'] judgment from deadbeat Judgment Debtor Leary . . ."* Those "steps to collect" were the

commencement during the pendency of the bankruptcy stay of a Fed.R.Civ.P. 69(a) proceeding in aid

of execution in this Court in case 12-CV-90. At page 8 of the brief, he also admits "Leary was listed as

a judgment creditor of Slabbed New Media, LLC." Next, at page 20 of the brief, Handshoe argues that

an 11 U.S.C. section 362(a) stay "works only to the benefit of a bankruptcy debtor, in this instance

Slabbed New Media, LLC, which not [sic] a party to this action . . .", arguing the "nonexistent violation

of an injunction" and thus admitting his personal knowledge that such an injunction from this Court

existed. While Mr. Handshoe is correct that the stay benefits the bankruptcy debtor, it also benefits the

bankruptcy estate, the court, and all creditors. Mr. Handshoe has judicially admitted a willful violation

under section 362(k).

In addition, in his sworn testimony before this Court on June 2, 2016, the following exchange

occurred:

> Q Mr. Handshoe, I have handed you a copy of the schedules in this case, and particularly
> Schedule B of the schedules. Do you recognize those documents?
> A Yes, sir, I do.
> Q Is the judgment receivable in the district court case, Southern District of Mississippi, Trout
> Point Lodge, et al., against you, listed as an asset of Slabbed New Media under question 18,
> which asks for other liquidated debt owing to debtor?

---

[2]"A court can appropriately treat statements in briefs as binding judicial admissions of fact. Leslie v. Knight Soda Fountain, 55 F.2d 224, 225 (2d Cir. 1932), See also City Nat. Bank v. U.S., 907 F.2d 536, 544 (5th Cir.1990); see also Young & Vann Supply Co. v. Gulf F. & a.R. Co., 5 F.2d 421, 423 (5th Cir.1925)." Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994). On judicial admissions in pleadings and briefs see also: Hill v. Federal Trade Commission, 124 F.2d 104 (5th Cir. 1941) ("judicial admissions are proof possessing the highest possible probative value"); Postscript Enter. v. City of Bridgeton, 905 F.2d 223, 227-28 (8th Cir. 1990); Holman v. Kemna, 212 F.3d 413 (8th Cir. 2000); Ross v. Philip Morris & Company, 328 F.2d 3 (8th Cir. 1964); Hunt v.Liberty Lobby, 720 F.2d 631 (11th Cir. 1983) at fn 29.

15

A Yes.
Q And the current value of that claim?
A Still $48,000.
[. . .]
BY MR. GENO:
Q And is it Slabbed New Media's intent, Mr. Handshoe, to pursue collection of that claim in the event the court sees fit to confirm the Plan?
A Yes.
Q And will the proceeds of that claim be dedicated to paying the unsecured creditors in this case?
A Yes.

Appearing here *pro se* as bankruptcy creditors, *PL* files this, their motion under 11 U.S.C. §§ 362 (a) and (k). Under the statute and pertinent case law, Mr. Handshoe willfully violated the bankruptcy stay he himself had put in motion, in a most egregious manner, i.e. trying to secure for himself alone as a creditor the collection of the $48,000 judgment that belonged to the bankruptcy estate. Leary suffered injuries as a result. Under existing law, all orders issued out of that post-judgment proceeding are nullities due to the stay violation.

**Irrefutable Facts**

There is no evidence that can be produced that would support a case that Handshoe did not willfully violate the automatic stay of 11 U.S.C. 362(a) or that the facts do not present appropriate circumstances for punitive damages. As stated above, on November 13, 2017, Mr. Handshoe admitted what is, under the law, a willful violation of the stay.

On January 6, 2015, Handshoe executed an Assignment of Rights & Claims in which he conveyed and transferred the entirety of a $48,000 attorney's fees judgment debt awarded in Case number 12-CV-90 in this Court to Slabbed New Media, LLC (exhibit to Handshoe JDE deposition). Handshoe has testified under oath and caused court papers to be filed stating that Slabbed New Media indemnified him in the amount of $48,000 (JDE deposition transcript). On June 16, 2015, Douglas Handshoe as the sole member of Slabbed New Media, L.L.C. placed that company into Chapter 11

15

bankruptcy protection.

> Slabbed's scheduled assets total $48,094.75 ($94.75 in cash and a judgment receivable for $48,000.00) and liabilities of $485,080.00.
>
> ...
>
> The judgment is shown as a receivable in connection with a lawsuit in the United States District Court for the Southern District of Mississippi, *Trout Point Lodge, et al. v. Handshoe*, No. 1:12cv90. Dkt. No. 31 at 5.
>
> ...
>
> The List of Creditors Holding 20 Largest Unsecured Claims lists Jack E. "Bobby" Truitt with a claim for legal fees in the amount of $48,000. Dkt. No. 2. These fees were incurred in the representation of Handshoe in the *Trout Point Lodge* case. *Trout Point Lodge Ltd. v. Handshoe*, No. 1:12-cv-90, at 19 (S.D. Miss. Dec. 11, 2013).

*In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016).

The filing of the bankruptcy case automatically stayed collection and other actions against the debtor and the debtor's property (cf. 11 U.S.C. 362(a)), and there can be no question regarding Handshoe's (and Truitt's) knowledge of the stay. Handshoe has stated Leary was a bankruptcy creditor (ECF 188). That bankruptcy case was dismissed as the Court denied confirmation because "Slabbed did not prove its plan was feasible"; the case closed on October 18, 2016.

On August 17, 2016—*before* the case was closed--Defendant by counterclaim Handshoe and his attorney Truitt filed a motion with the United States District Court for the Southern District of Mississippi in case number 2012-CV-90 (cf. Leary declaration). "If the stay was in effect, the [...] motion was a nullity." *USX Corp. v. Penn Central Corp.*, 130 F.3d 562 (3d Cir. 1997). There is no credible proof he gave notice to the Plaintiffs in that case, including PL, of the motion (see declaration of Charles L. Leary, certificate of service, and also cause no. 12-CV-90 ECF 77 "Motion to Examine"). The certificate of service is seriously deficient (cf. Truitt's Certificate of Service). See Notes of Advisory Committee on Rules—1991 Amendment to Fed.R.Civ.P. 5: "The certificate will generally *specify* the date as well as the *manner of service*." See also: L.U.Civ.R. FORM 2(e) (ND/SD MISS.) "I

15

hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants," requiring listing them.[3] Perret and Leary had entered *pro se* appearances in that case prior to Handshoe's Rule 69 motion, and were not signed up to receive notices electronically.

The Handshoe judgment debtor examination ("JDE") motion commenced a Rule 69(a)(1) post-judgment supplementary proceeding in aid of execution; *Gabovitch v. Lundy*, 584 F.2d 559 (1st Cir. 1978). Handshoe, through pre-petition creditor Truitt, filed the motion for the JDE in his *personal* name, as the sole judgment creditor. "[T]he generally accepted definition of "judgment creditor"" is clearcut. "*See, e.g., Black's Law Dictionary* 921 (9th ed. 2009) ("A person having a legal right to

---

3   "Service by mail is complete upon mailing, Fed.R.Civ.P. 5(b), even if it is not received. *Rifkin v. United States Lines,* 24 F.R.D. 122, 123 (S.D.N.Y.1959); 2 *Moore's Federal Practice* ¶ 5.07 (1987); C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1148 (1987). However, the burden of showing that service was made is on the moving party. *Daley v. ALIA,* 105 F.R.D. 87 (E.D.N.Y.1985); *Mroz v. Dravo Corp.,* 293 F.Supp. 499 (W.D.Pa.1968), *aff'd,* 429 F.2d 1156 (3d Cir.1970). Given the important consequences that flow from the service of pleadings and other papers, courts have required the "strictest and most exacting compliance" with Rule 5(b) when service is made by mail. *Timmons v. United States,* 194 F.2d 357, 360 (4th Cir.), *cert. denied,* 344 U.S. 844, 73 S.Ct. 59, 97 L.Ed. 656 (1952). We conclude that appellant has failed to meet his burden of proving that appellees were properly served with his Rule 59(e) motion within ten days after the entry of judgment.

A threshold question for us to decide is whether the Rule 59(e) motion was mailed to the opposing attorney at counsel's "last known address," Fed.R.Civ.P. 5(b); *Freed v. Plastic Packaging Materials, Inc.,* 66 F.R.D. 550, 552 (E.D.Pa.1975), within the ten-day period after entry of judgment. For service by mail to be valid under Rule 5(b) the pleading or document has to be "placed in an envelope addressed to the last known address of the opposing attorney — or party when service on a party is proper — and deposited in a United States Post Office or post office box." C. Wright & A. Miller, *Federal Practice and Procedure* § 1148, at 432-33.

Appellant contends that the certificate of service contained in his motion raises a rebuttable presumption that he made proper and timely service by mail. That certificate, however, did not state the names and addresses of those allegedly served. While Fed.R.Civ.P. 5 does not detail the contents of a proof of service, *Timmons,* 194 F.2d at 360, many district courts, including the District of Puerto Rico, have promulgated local rules on the subject. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1150. The relevant local rule of the United States District Court for the District of Puerto Rico, where this action was brought, is Rule 311.3, which states as follows:
    The movant and respondent shall serve copies of their respective papers upon all parties on or before the date that they are filed with the Clerk, and such papers must indicate the date and method of service. *The certificate of service shall indicate the date, method of service and the names and addresses of all persons or ~~firms served.~~*

    ~~(Emphasis supplied.)~~

~~This rule is consistent with Fed.R.Civ.P.'s requirement that mailing be to an attorney at his last known address. See note 5, supra. Appellant's certificate of service incorporated in his Rule 59(e) motion clearly did not pass muster under Local Rule 311.3. The certificate says only that "a true copy of this motion was mailed to all other counsel in this action." The names and addresses of counsel to whom mailed are conspicuously absent." Enwonwu v. M/T PUSSARINA, 840 F.2d 157 (1st Cir. 1988)~~

enforce execution of a judgment for a specific sum of money.").” *Patton v. Target Corp.*, 580 F.3d 942 (9th Cir. 2009). Handshoe (mis)represented to the Court: “Mover *is the judgment creditor* of debtors, Trout Point Lodge, Ltd., Vaughn Perret, and Charles Leary . . .” (Case 1:12-cv-00090-LG-JMR Document 77 Filed 08/17/16) (emphasis added). Handshoe further stated: “mover intends to prove that the judgment debtors own property subject to execution” *id*.

Handshoe failed to inform the district court of the previous transfer of the entire debt to Slabbed New Media, L.L.C., this bankruptcy proceeding, the indemnification, and the section 362(a) automatic stay; this act of omission must be viewed as intentional. Handshoe proceeded to attempt to execute on the judgment using the Fed.R.Civ.P. 69(a) proceeding, including expending judicial resources by holding a hearing for a JDE (November 22, 2016) and later filing for an unwarranted writ of execution from the district court (entailing further expenditure of judicial resources, see 12-CV-90 ECFs 90, 91, 92, 93, & 94), as well as two hearings. Handshoe ultimately filed a motion to have Leary, Perret, and Trout Point Lodge held in contempt; not by chance, that occurred on May 16, 2017 (12-CV-90 ECF 84), a day after he was served with a state court Writ of Execution relating to a 2014 copyright infringement judgment Leary and his fellow plaintiffs had obtained against Handshoe, which had properly been made a judgment of Hancock County Circuit Court (Cf. ECF 96-8 and also "Trout Point Lodge v. Handshoe" (2017). *Historical and Topical Legal Documents*. 1377. http://digitalcommons.law.scu.edu/historical/1377). Neither Leary nor his fellow plaintiffs received notice of or were served with that contempt motion (Leary declaration). Handshoe made use of the illegally-manufactured contempt proceedings in motions filed in state court and this Court to impugn Leary, Perret, and Trout Point Lodge's character with the court, to embarrass them, and as a weapon in negotiation.[4]

---

4   Hancock County Circuit Court, case 15-0458 “Plaintiffs . . . are soon to be subject to contempt of court for their failure to appear as ordered by the Judge Louis Guirola.” (motion filed November 28, 2016). How Handshoe could have been so sure of the prospective contempt finding of a U.S. district court judge begs the question as to exactly how Handshoe procured that factual situation. Handshoe has used the contempt in arguments made in various briefs submitted to the

Handshoe's August, 2016, motion--filed in willful violation of the stay--sought an order scheduling a JDE in Gulfport, Mississippi, for the Plaintiffs in that 12-cv-90 case, including Leary, Vaughn Perret, and Trout Point Lodge, Limited. The court granted the motion as unopposed, and it was unopposed because notice was never served on Leary and his fellow plaintiffs.[5] Handshoe can present no credible proof Leary, Perret, or Trout Point Lodge were served with notice of the JDE hearing.[6]

As a direct and proximate result of Mr. Handshoe's JDE motion filed while the bankruptcy stay was in place, Leary and Mr. Perret are apparently being held in contempt, which has caused both Perret and Leary significant and concrete emotional distress as well as costs and sanctions. Trout Point Lodge, which is owned by Leary and Perret and is their primary source of income, has apparently also been held in contempt, although purported service of process (show cause order and compulsory process to appear for the JDE) on the business and the personal plaintiffs was not authorized by the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15,

---

district court in case 15-CV-382, attempting to besmirch Leary's character.

5  Handshoe and attorney Truitt knew how to contact Leary and were in communication with him by telephone and email at that time regarding an appeal filed July 22, 2016, in that case with the United States Court of Appeals for the Fifth Circuit. However, they never mentioned the Rule 69(a) motion or the subsequent hearing to Leary, including in communications one day before the JDE hearing.

6  The affidavit of service filed by Handshoe does not state what documents were served, and makes clear service of process was not effected personally on Leary, Perret, or the recognized agent of Trout Point Lodge. See "Affidavit of Service" dated October 17, 2016 filed with this motion. MS Code § 13-1-271 unequivocally states the examination "order [must] have been served personally on the judgment debtor," or otherwise he cannot be "punished for contempt." In this Circuit, "personal notice of the contempt hearing" on a party is required and constructive notice is insufficient; *Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) at fn. 7. Accord: *United States v. McAnlis*, 721 F.2d 334 (11th Cir. 1983); *In re Brummitt*, 608 F.2d 640 (5th Cir. 1979); Marna M. Tess-Mattner, "Contempt of Court: Wisconsin's Erasure of the Blurred Distinction Between Civil and Criminal Contempt," 66 Marq.L. Rev. 369 (1983) at fn. 92. Fed.R.Civ.P. 4.1 governs serving *process* other than a summons under Rule 4 and "preempts [state] execution law under Rule 69(a) as to service" *Hilao v. Estate of Marcos*, 95 F.3d 848 (9th Cir. 1996), examining Rule 4.1 in Rule 69(a) proceedings. Rule 4.1 provides that "[p]rocess other than a summons ... or subpoena ... shall be served by a United States marshal, a deputy United States marshal, or a person specially appointed for that purpose" and that "[t]he process may be served anywhere within the territorial limits of the state in which the district court is located." See also *US v. Schultz*, Civil Action No 2: 07-mc-39 (S.D. Ohio Apr. 8, 2014) ("Fed. R. Civ. P. 69(a)(1). The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *Id.* The "state where the court is located" is "[o]rdinarily . . . the state in which enforcement of the judgment will be sought, since process for the enforcement of the judgment is subject to the territorial limitations of Rule 4.1[.]" 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3012 (2d ed.).") (emphasis added). Under Rule 4.1 Plaintiffs could not be properly served with compulsory process in Canada.

15

1965 (Hague Service Convention), [1969] 20 U. S. T. 361, T. I. A. S. No. 6638, Fed.R.Civ.P. 4(h) or Fed.R.Civ.P. 4.1.[7] A show cause order is "process" (*Brassell v. Turner*, 468 F. Supp. 2d 854 (S.D. Miss. 2006); *Lopez v. COUNTRYWIDE MORTGAGE*, Civil Action No. 2: 06-116 (S.D. Tex. Oct. 20, 2008); *BATIZ v. Brown*, Civil No. 12-581 (RMB/AMD) (D.N.Y. Sept. 30, 2015)) and thus governed by the Hague Service Convention.

## The Law of 11 U.S.C. §§ 362(a) and (k)

The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (citing S.Rep. No. 95-989, at 54 (1978); H.R.Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840, 5963, 6296). "11 U.S.C. § 362(h) [now 362(k)] creates a private remedy for a willful violation of a section 362(a) stay" *Pettitt v. Baker*, 876 F.2d 456 (5th Cir. 1989). "A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, a district court has jurisdiction over it. [...] *See* 28 U.S.C. § 1334(b); *see also Justice Cometh, Ltd. v. Lambert,* 426 F.3d 1342, 1343 (11th Cir.2005) (per curiam); *Price v. Rochford,* 947 F.2d 829, 832 n. 1 (7th Cir.1991)." *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473 (4th Cir. 2015); also: *Mansker v. DIVERSIFIED ADJUSTMENT SERVICE, INC.*, No. 17 C 2064 (N.D. Ill. July 7, 2017). Congress imposed no limitations period on such a claim. *Price v. Rochford*, supra (district courts have jurisdiction, "Congress did not enact a statute of limitations"); *In re Newcomer*, 416 B.R. 166 (Bankr. D. Md. 2009) (finding no statue of limitations on 362(k) claims).

---

7   See Declarations under penalty of perjury of Sophia Gruber and Ulysse Martin. To be valid, service of such process had to be effected pursuant to the Hague Convention absent waiver or a provision of federal law to the contrary; cf. Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Convention), [1969] 20 U.S.T. 361. The U.S. Court of Appeals for the Fifth Circuit has found that "insisting on service of process in accordance with the Hague Convention" is "well founded in fact and warranted by existing law" Sheets v. Yamaha Motors Corp., USA, 891 F.2d 533 (5th Cir. 1990). "Judicial" documents include those "issued in the course of a civil or commercial litigation...[such as]... a summons and complaint, writ, warrant, mandate, citation, show cause order, subpoena, or judgment... requiring formal service...." See Bruno A. Ristau, International Judicial Assistance: Civil and Commercial § 4-2-2 (3d ed. 2000), § 4-1-4(7).

15

The automatic-stay provision of 11 U.S.C. states, *inter alia:*

[A] petition filed under ... this title... operates as a stay, applicable to all entities, of—

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a).

Section 362(k) (formerly § 362(h)) provides in part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The automatic stay remains in effect as long as the case is open or until such property is no longer property of the estate or a discharge is granted. *See* 11 U.S.C. § 362(c).

> Requiring the dismissal of a § 362(k)(1) proceeding simply because the underlying bankruptcy case has been dismissed would not make sense. A court must have the power to compensate victims of violations of the automatic stay and punish the violators, even after the conclusion of the underlying bankruptcy case. *See Davis v. Courington (In re Davis),* 177 B.R. 907, 911-12 (9th Cir. B.A.P. 1995). "[I]t is clear that dismissal of a case does not validate actions which constituted violations of the automatic stay during the pendency of that case."

*In re Johnson*, 575 F.3d 1079 (10th Cir. 2009).

"[T]he purpose of subsection 362(a)(3) [...] is to protect the estate from direct action taken by *creditors* against a debtor's real or personal property, and to prevent an uncontrolled scramble to liquidate the estate." *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D. Tex. 1986) (emphasis added). The automatic stay provision is intended "to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by *uncoordinated proceedings in other arenas.*" *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631, 640 (2d Cir.1999) (internal quotation marks omitted; emphasis added). The stay does not solely apply to actions against the debtor, but also any actions affecting the debtor's property. The House Report on the Bankruptcy Reform Act states as follows:

15

Paragraph (3) stays any act to obtain possession of property of the estate (that is, property of the debtor as of the date of the filing of the petition) or property from the estate (property over which the estate has control or possession). The purpose of the provision is to prevent dismemberment of the estate. Liquidation must proceed in an orderly fashion.

Cf. *Continental Air Lines*, supra.

Thus, 362(a)(3) "bars the actual taking of property of the estate, or "exercise[ing] dominion over property that belonged to [the debtor's estate]." *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995)." *IN RE MANCHANDA*, No. 16-10222 (JLG) (Bankr. S.D.N.Y. May 19, 2016). See also: *In re Zartun*, 30 B.R. 543 (B.A.P. 9th Cir. 1983). "A careful reading of [362(a)(3)] reveals that the actions prohibited need not be done directly against the debtor himself. [...] "Any action to collect" means any act to collect from any source whatsoever." *Matter of Jandel*, 8 B.R. 855 (Bankr. S.D. Ohio 1981).

Attempts by any creditor to execute on a judgment debt belonging to the estate violates the stay.

> The stay also "protects the estate and gives a trustee the opportunity to marshal and distribute the assets." *In re Panek*, 402 B.R. 71, 75 (Bankr.D.Mass.2009) (citing *Nelson v. Taglienti (In re Nelson)*, 994 F.2d 42, 44 (1st Cir.1993)); *In re Rosa*, 313 B.R. 1, 6 (Bankr.D.Mass.2004).
>
> "In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay." *Soares*, 107 F.3d at 975-76. And in light of this guidance from the First Circuit and its deep set belief in the importance of the automatic stay, this Court has held many times that "the protections afforded by the automatic stay are meaningless if they are not enforced." *In re Panek*, 402 B.R. at 76; *In re Rosa*, 313 B.R. at 6.

*In re Beckett*, 455 B.R. 9 (Bankr. D. Mass. 2011).

Using post-judgment or supplementary proceedings, including those with consequences of civil contempt, are efforts to obtain possession of the property of the bankruptcy estate; they violate section the 362(a) stay and are punishable under 362(k). The stay encompasses Fed.R.Civ.P. 69(a) proceedings in a U.S. district court and any resulting orders. See: *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000); *Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320 (7th Cir. 1992) (reporting "supplemental "enforcement" proceedings" "barred by 11 U.S.C. § 362, the automatic stay in bankruptcy, because [...] a creditor was trying to reach assets of the estate. 131 B.R. 410 (1991)"). In most cases, this includes post-judgment proceedings against the debtor, but as seen above would also

15

involve any actions that would cause the estate's assets to lose the protection of the stay under section 362(a)(3). "The automatic stay is a creature of statute; as such, its scope is governed wholly by the language of 11 U.S.C. §§ 362(a)-(b). The automatic stay of § 362(a) lies unless one of the specific exceptions of § 362(b) is applicable. *In re Blarney, Inc.,* 53 B.R. 162, 164 (Bankr.D.Minn. 1985). Proceedings for constructive civil contempt are not among these exceptions." *In re Atkins*, 176 B.R. 998 (Bankr. D. Minn. 1994). As pointed out by the Court of Appeals in *Brennan*, supra, Rule 69(a) is "a rule which governs discovery "in proceedings on and in aid of" the "execution" of a judgment, and are thus covered by section 362(a). See also *In re Smith*, 180 B.R. 311 (Bankr. N.D. Ga. 1995) ("Contempt Order was entered to force" a response to "post judgment interrogatories" "in an effort to collect" a judgment. If "the contempt proceeding" "had a significant bearing on Debtor's economic status" then it "was subject to the automatic stay"). See also *In re Siskin*, 258 B.R. 554 (Bankr. E.D.N.Y. 2001); *In re Daniels*, 316 B.R. 342 (Bankr. D. Idaho 2004), collecting cases at fn. 4.

Fully in line with the above, the U.S. Court of Appeals for the Fifth Circuit has held that initiating a complaint under § 362(k) is not limited to the bankruptcy debtor and includes creditors. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009).

> When 11 U.S.C. § 1109(b) is read in conjunction with § 362(k), it becomes clear that Congress did not enact § 362(k) solely for the benefit of debtors. Accordingly, based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall "within the zone of interests" protected by § 362(k).

*St. Paul*, id.

> A party seeking to establish a violation of the automatic stay must establish, by a preponderance of the evidence, that (1) the defendant knew of the existence of the stay; (2) the defendant performed an intentional action; and (3) the action violated the stay. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir.2005); *In re Saunders,* 2014 WL 811734, *2 (Bankr.D.Md. Feb. 28, 2014); *In re Clayton,* 235 B.R. 801 (Bankr.M.D.N.C.1998) (holding that the standard of proof is the preponderance of the evidence standard).

*In re Abell*, 549 B.R. 631 (Bankr. D. Md. 2016).

***Willfulness***

15

"A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act. *See Johnston Evtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir.1993); *Lansdale Family Restaurants, Inc. v. Weis Food Service (In re Lansdale Family Restaurants, Inc.),* 977 F.2d 826, 829 (3d Cir.1992); *Crysen/Montenay Energy Co.,* 902 F.2d at 1105; *A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.),* 223 B.R. 839 (D.N.H.1998)." *In re Sharon,* 234 B.R. 676 (B.A.P. 6th Cir. 1999). Also: *Budget Serv. Co. v. Better Homes,* 804 F.2d 289, 292-93 (4th Cir. 1986); *Skillforce, Inc. v. Hafer,* 509 B.R. 523 (E.D. Va. 2014). Knowledge of the bankruptcy is considered knowledge that there is an automatic stay in effect. *In re Lile,* 103 B.R. 830, 837 (Bankr.S.D.Tex. 1989), *aff'd,* 161 B.R. 788 (S.D.Tex.1993), *aff'd in part sub nom. Matter of Lile,* 43 F.3d 668 (5th Cir. 1994) ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay."). It is (almost) unprecedented for an individual who initiated a bankruptcy to then violate the stay. "Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded." *Brown v. Chestnut (In re Chestnut),* 422 F.3d 298, 302 (5th Cir. 2005) (quoting *In re Taylor,* 884 F.2d 478, 482 (9th Cir. 1989)). "As held in the cases of *Citizens Bank v. Strumpf,* 37 F.3d 155 (4th Cir. 1994), *overruled on other grounds* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) and *In re Jones,* Case No. 06-00380-8-RDD (Bankr. E.D.N.C. June 27, 2007), willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *In re Lofton,* 385 B.R. 133 (Bankr. E.D.N.C. 2008).

"In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. *See Homer Nat'l Bank v. Namie,* 96 B.R. 652, 654 (W.D.La. 1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual

15

notice, the burden shifts to the creditor to *prevent* violations of the automatic stay." *Fleet Mortg.*

*Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999) (emphasis added). A section 362(a) violator "and its

attorney willfully violate[] the automatic stay by *failing to act to nullify [a] Contempt Order*" entered

in violation of a stay, "and they are, therefore, subject to sanctions for such willful violation. *Atkins*,

176 B.R. 998." *In re Smith*, 180 B.R. 311 (Bankr. N.D. Ga. 1995) (emphasis added). "[W]here there is

actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.

Satisfying these requirements itself creates *strict liability*. There is nothing more to prove except

damages." *In re Daniels,* 206 B.R. 444, 445 (Bankr. E.D.Mich.1997) applied by *In re Webb*, 470 B.R.

439 (B.A.P. 6th Cir. 2012) (emphasis added).

***Voidness***

A bankruptcy stay "is designed to immediately maintain the status quo by precluding and

nullifying postpetition actions, whether judicial or nonjudicial, in nonbankruptcy forums against the

debtor and property of the estate. *I.C.C. v. Holmes Transp., Inc.,* 931 F.2d 984, 987 (1st Cir.1991)." *In*

*re Dunbar*, 235 B.R. 465 (B.A.P. 9th Cir. 1999). Although in this Circuit legal or judicial acts in

contravention of a stay are voidable, not necessarily void, once a bankruptcy is closed, an entity

violating the stay cannot seek to validate his actions taken in violation of the stay. The initiating motion

and any resulting orders were thus nullities. *USX Corp. v. Penn Central Corp.*, 130 F.3d 562 (3d Cir.

1997).

> The Fifth Circuit Court of Appeals has also held that actions taken in violation of the automatic
> stay, while voidable under Fifth Circuit case law, must be validated once discovered in order to
> be effective. *Matter of Coho Resources, Inc.,* 345 F.3d 338, 343-44 (5th Cir.2003). In the case
> at bar, the Risken Defendants not only never sought validation of their stay violation, they never
> disclosed the filing of the Risken Mineral Deed at all until the filing of the instant Adversary
> Proceeding. The Fifth Circuit recently held that "the retroactive validation of actions taken in
> violation of an automatic stay is reserved to the discretion of bankruptcy courts, and they are
> cautioned to use this discretion sparingly because of the adverse impact that validation could
> have on other creditors who honored the stay." *In re Brown,* 178 Fed.Appx. 409 (5th Cir.2006),

*cert. den.* ___ U.S. ___, 127 S.Ct. 555, 166 L.Ed.2d 410 (2006).
*In re Atravasada Land and Cattle Inc.*, 388 B.R. 255 (Bankr. S.D. Tex. 2008).

A section 361(a) stay applies to state and federal courts.

> [I]t is not limited to the litigants, and extends to the nonbankruptcy court as well. "Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor. This is so because [section] 362's stay is mandatory and `applicable to all entities', including state and federal courts" (*Maritime Elec. Co. v United Jersey Bank,* 959 F2d 1194, 1206 [3d Cir 1991], quoting 11 USC § 362 [a]; *see In re Best Payphones, supra*).

*Carr v. McGriff,* 8 A.D.3d 420, 2004 WL 1341842 (App. Div.2d Dep't. 2004)

Attempts to collect a scheduled debt in another forum are impermissible; *In re Ellis,* 66 B.R. 821, 823 (N.D.Ill. 1986); creditors who act without court approval do so at their peril and expense. *In re AM International, Inc.,* 53 B.R. 744 (Bankr.M.D.Tenn.1985). Case law makes clear that any non-bankruptcy court filings or *proceedings* commenced in violation of a stay are void (absent retroactive validation by the bankruptcy court) and that any court decisions or orders that relied on those filings or motions, or within those proceedings, are also void even if the stay was lifted by the time of the decision. "[W]hether a case is subject to the automatic stay must be determined at its inception." *Association of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446, 449 (3rd Cir.1982). Explicitly finding its ruling consistent with *Pope v. Manville Forest Products Corp.,* 778 F.2d 238 (5th Cir.1985), the U.S. Court of Appeals for the Tenth Circuit in *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990) questioned whether "the lifting of the stay subsequent to the entry of judgment" retroactively validated a proceeding initiated during a stay. The Court concluded it did not. "[T]he stay on judicial proceedings made the district court's action void; lifting the stay does not change the character of that action. The lifting of the stay thus validates only later judicial proceedings, not prior ones." In *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991), the U.S. Court of Appeals for the Third Circuit addressed motions filed during a stay and the resulting orders. Notably, in that case the bankruptcy ended on September 25, 1990; nevertheless distinct court orders issued

15

November 30, 1990, were void because the motions they were based on were filed during the stay.

> All of MNY's post-judgment motions made during the pendency of Son's bankruptcy with respect to its conversion claim against Son are void. For example, MNY's August 28, 1990 motion to amend the July 16, 1990 judgment to reflect accrual of post-judgment interest on the September 16, 1988 partial summary judgment award of actual conversion damages to MNY is void. So too is the district court's November 30, 1990 order granting that particular motion, and therefore that order must be vacated.

> Similarly, Son's own July 25, 1990 motion made during the pendency of his bankruptcy is void to the extent it sought to vacate the 1988 summary judgment on MNY's conversion claim against Son. The district court's November 30 denial of that aspect of Son's July 25 motion must be vacated.

> To the extent MNY's and Father's Rule 60 motions of August 17 and September 28, 1990 were void *ab initio* and must be reconsidered, the district court should take action consistent with this opinion on remand.

Maritime, *id* at fn 13.

Notably the Third Circuit joins the Fifth Circuit in holding judicial proceedings conducted in violation of the automatic stay are voidable. *Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F. Supp. 342 (D.N.Y. 1996). See also: *In re Advent Corp.*, 24 B.R. 612 (B.A.P. 1st Cir. 1982) (Filing of a "proceeding" to cancel a bond was void *ab initio* when commenced after a 362(a) stay. "[T]he action taken by F & D and Customs to render ineffective the $100,000 general term bond was of no effect, and that the bond continued to cover shipments until it expired by its own terms . . ."); *In re Dominguez, 312 B.R. 499 (Bankr. S.D.N.Y. 2004)* (Despite "a debtor's failure to redeem property before the expiration date permanently extinguished her interest in" property, "filing" to affirm a "default judgment post-petition" and serving a notice "were both substantive acts" that violated the stay. Therefore the creditor "has expended time and resources for a judgment that is void"); *In re Hoffinger Industries, Inc.*, 329 F.3d 948 (8th Cir. 2003) (post-stay filing of notice of appeal was void); *Anglin v. Village of Washington Park*, No. 03-cv-0846-MJR (S.D. Ill. Apr. 21, 2005) (After a stay was in place, a magistrate judge in a district court case affected by the stay ordered plaintiffs to submit an amended complaint; the court found the "allegations in the amended complaint [...] are void as the amended

complaint was filed after the stay was entered" and refused to rely on it as the operative complaint); *Middle Tennessee News v. Charnel of Cincinnati*, 250 F.3d 1077 (7th Cir. 2001) ("Although both parties were aware of the bankruptcy case, neither informed the district court of it and the parties proceeded as if there were no stay." After the stay was entered, a magistrate judge had an accountant provide "findings of liability and damages" and the magistrate "allowed the parties an opportunity (1) to submit any objections [...] and (2) to raise any other issues of material fact." The Court of Appeals found the "magistrate judge's action void because taken in violation of the stay."); *CONSOLIDATED PIPE & SUPPLY COMPANY, INC. v. DEER PATH VACATIONS*, No. E2003-02787-COA-R3-CV (Tenn. Ct. App. June 8, 2004) ("We are unaware of any authority supporting the Lienor's argument that the lifting of the stay can "breathe" new life into a lawsuit filed in violation of the stay and *before* it was lifted"); *Burrhus v. M & S Mach. & Supply Co.*, 897 S.W.2d 871 (Tex. App. 1995) ("An appeal cannot be perfected during the pendency of the bankruptcy stay. *Id.* In order to give full effect to the automatic stay of the bankruptcy code, an appeal bond filed during the stay is void, and if no subsequent bond is filed after the stay is lifted, the appellate court will not obtain jurisdiction. *Nautical Landings*, 791 S.W.2d at 296. The lifting of the stay does not validate the previously filed appeal bond. *Id.; see Goswami v. Metropolitan Sav. & Loan Assoc.*, 751 S.W.2d 487, 490 (Tex.1988)").

"Judicial actions taken against a debtor are void *ab initio,* absent relief from the automatic stay." *In re Dominguez*, 312 B.R. 499 (Bankr. S.D.N.Y. 2004). "Such actions are void *ab initio* whether the creditor acts with knowledge of the stay or not. When a creditor violates the automatic stay knowing that a bankruptcy petition has been filed, *the creditor acts in contempt.* Formal notice of the bankruptcy is not required if the creditor has actual knowledge of it."; *In re Wariner,* 16 B.R. 216, 218, 5 C.B.C.2d 865, 866 (Bkrtcy.N.D.Tex.1981) (internal citation removed, emphasis added). "All actions taken in violation of its terms are void, even where there was no actual notice of the existence of the stay." *Homer Nat. Bank v. Namie*, 96 B.R. 652 (W.D. La. 1989); also *Borg-Warner Acceptance Corp. v.*

16

*Hall,* 685 F.2d 1306 (11th Cir.1982). A "bankruptcy court's statutory power" includes the power "to annul the automatic stay, i.e., to 'lift the automatic stay retroactively and thereby validate actions which *otherwise would be void*" *In re Coho Res., Inc.,* 345 F.3d 338, 344 (5th Cir. 2003) (footnote omitted) (quoting *In re Soares,* 107 F.3d 969, 976 (1st Cir. 1997)) (emphasis added). In this Circuit, absent retroactive validation from the bankruptcy court, orders from other courts arising from a stay violation "would be void." Also: *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir. 1989) for discussion of void and voidable.

***Punitive Damages***

For a court to award punitive damages, "an egregious conduct standard is appropriate" in section 362(k) cases. *In re Repine,* 536 F.3d 512 (5th Cir. 2008). Egregious conduct consists of "willful disregard and disdain for both the bankruptcy process and one of the most fundamental protections afforded to bankruptcy debtors, the automatic stay" and is also supported when there is a "waste of judicial resources" *In re Adams,* 516 B.R. 361 (Bankr. S.D. Miss. 2014). Also: *In re Burns,* 503 B.R. 666 (Bankr. S.D. Miss. 2013). "[P]unitive damages can be supported when the conduct at issue is intentional and egregious, *In re Ketelsen,* 880 F.2d 990, 993 (8th Cir.1989), or when the defendant acted in "bad faith," or "with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *In re Sanchez,* 372 B.R. 289, 315 (Bankr.S.D.Tex. 2007)." *Jones v. Wells Fargo Home Mortg., Inc.,* 489 B.R. 645 (E.D. La. 2013). "Appropriate circumstances" "requires a showing of particular willfulness, that heightened state of mind is relevant in assessing punitive damages." *In re Aponte,* 82 B.R. 738 (Bankr. E.D. Pa. 1988). Where the "natural consequence" of "conduct" violating the stay "was to oppress, harass, and abuse" it is egregious, warranting punitive damages. *In re Carrigan,* 109 B.R. 167 (Bankr. W.D.N.C. 1989). "[R]epeated efforts" at collection "despite [...] knowledge of their bankruptcy filing demonstrates an arrogant defiance of the bankruptcy stay and constitutes egregious conduct." *IN RE SPRINGER,* No. 15-33254

17

(Bankr. W.D. Ky. Aug. 16, 2017). "Even a minor stay violation, if it is persistent, may support an

award of punitive damages. Beasley v. Sea Island Bank (In re Beasley), Adv. No. 05-6055, 2006 WL

6902311, at *2 (Bankr. S.D. Ga. 2006)." *IN RE EVERETTE*, No. 10-20842 (Bankr. S.D. Ga. Sept. 4,

2014).

> [B]y § 362(h)'s use of the words "appropriate circumstances," as opposed to any reference to the
> transgressor's state of mind, a high level of culpable intent is not necessarily a prerequisite to an
> award of punitive damages. To hold otherwise, besides running counter to the plain-meaning
> approach repeatedly applied by the Supreme Court of the United States when interpreting the
> Bankruptcy Code, would also run counter to the purpose underlying the existence of punitive
> damages in general: To deter similar conduct in the future. *In re Baggs,* 283 B.R. at 729.
> Therefore, even in the absence of any overt wrongful intent, this Court will follow the rule, as
> has been applied by other courts, that an award of punitive damages may still be appropriate for
> a violation of the automatic stay when there is a strong showing that the creditor acted in bad
> faith or otherwise undertook their actions in reckless disregard of the law. *In re Gullett,* 230
> B.R. 321 (Bankr. S.D. Tex. 1999), *order rev'd on other grounds,* 253 B.R. 796 (S.D. Tex. 1999),
> *aff'd,* 230 F.3d 585 (5th Cir. 2000); *In re Gagliardi,* 290 B.R. 808, 820 (Bankr. D. Colo. 2003); *In
> re Rochez,* 211 B.R. 459, 462-63 (Bankr. D.R.I. 1997)

*In re Risan,* 324 B.R. 39 (Bankr. N.D. Ohio 2004) (footnote removed)

When a creditor "unilaterally ignore[s] the operation of the stay" it "is particularly troublesome" when

"this event occurred well into the progression of the" bankruptcy case. In such a case, "the only

conclusion that this Court can draw is that the Creditor simply found it to be more expedient to ignore

federal bankruptcy law. This, of course, cannot be tolerated, and makes an award of punitive damages

in this matter particularly appropriate." *In re Pawlowicz,* 337 B.R. 640 (Bankr. N.D. Ohio 2005)

**The Law on Standing As Applied to Handshoe: A Factor Informing the Egregiousness of Handshoe's Acts**

An aggravating factor in this case is the utter lack of standing of Handshoe to initiate the Rule

69(a) action and to move for the subsequent contempt order. It speaks to the lack of both Constitutional

and prudential standing of Handshoe, which makes the stay violation even more egregious.

In order to initiate the Rule 69 supplementary proceeding in aid of execution, Handshoe had to

have standing to do so. "Article III standing requires "[parties] to allege such a personal stake in the

outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf."

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation omitted).

According to the United States Supreme Court, '[t]o establish Article III standing, the plaintiff seeking

compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' *Id.*

(quotation omitted)." *Handshoe v. Perret*, Civil No. 1: 15CV382-HSO-JCG (S.D. Miss. Sept. 19,

2017).

> Prudential standing requirements are judicially created limits that concern whether a
> plaintiff's grievance arguably falls within the zone of interests protected by the statutory
> provision invoked in the suit, whether the complaint raises abstract questions or a
> generalized grievance more properly addressed by the legislative branch, and whether
> the plaintiff is asserting his or her own legal rights and interests rather than the legal
> rights and interests of third parties.

> *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001)
> (quotation omitted); *see also Superior MRI Services, Inc.*, 778 F.3d at 504 ("One principle of
> prudential standing requires that a plaintiff generally must assert his own legal rights and
> interests, and cannot rest his claim to relief on the legal rights or interests of third parties.")
> (quotation omitted).

*Handshoe*, id.

Given the irrefutable facts of this case, Handshoe lacked both types of standing when he filed

the Rule 69(a) motion in August, 2016. He had been indemnified for the attorney's fees in the sum of

$48,000 and had not paid that money to his attorney, Mr. Truitt, and thus had no cognizable injury "that

is likely to be redressed by a favorable judicial decision." In addition, he was no longer the judgment

creditor. Handshoe was not "asserting his or her own legal rights and interests rather than the legal

rights and interests of third parties." Although he falsely represented otherwise to the district court in

case 12-CV-90, under MS Code § 13-1-265 (2013), invoked by Rule 69, Handshoe was not the

"judgment creditor" at the time the motion for debtor examination was filed. In yet Handshoe blatantly

misrepresented this fact to that court more than once: on May 16, 2017 ("Movant is judgment creditor

of the plaintiffs", Case 1:12-cv-00090-LG-JMR Document 85 Filed 05/16/17); on August 17, 2016

("Mover is the judgment creditor of debtors, Trout Point Lodge, Ltd., Vaughn Perret, and Charles

19

_____, in the amount of $48,000", Case 1:12-cv-00090-LG-JMR Document 77 Filed 08/17/16). This mistruth led not only to bankruptcy stay violations, but also caused the district court to issue orders

made whole for the $48,000 in question. According to his own testimony, after he was indemnified by Slabbed New Media, and according to Mr. Truitt's bankruptcy filings as a creditor, neither Handshoe

court as a creditor claiming $48,000 in fees. (See *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016) at fn 6). Remarkably, however, Truitt represented Handshoe in case 12-cv-90 to file

benefitting from Truitt's loss. Truitt appears to have conspired with Handshoe to benefit both of them by claiming the fees as a creditor in bankruptcy. See *In re Slabbed New Media*, supra.

A threshold requirement to bring the post judgment proceeding in Handshoe and is he would "have to have standing as a judgment creditor in order to bring" a supplementary proceeding *Sax v. Sax*, 294 F.2d 133 (5th Cir. 1961). Also *ZAUSA v. PELLIN*, No. 16-cv-11440 (N.D. Ill. May 26, 2017)

proceedings" "to collect a judgment," which "must "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1)," and finding that the supplementary proceeding must be

..... ... ................ ... ...... ...... ........... *Colon v. Strawberry*, No. 4: 12cv101-MCR/CAS (N.D. Fla. Mar. 17, 2015) (when interest in a judgment previously "was extinguished," the person who was previously a judgment creditor "does not have status as a judgment creditor"); *Robbins v. Blecher*, 52 Cal. App. 4th 886 (Ct. App. 1997) ("Sessions had possessed a judgment against Joor when it had filed the alter ego action, it no longer possessed that judgment. As an entity which was no longer a judgment

20

creditor of Joor, Sessions had simply lost standing to pursue Joor's alter egos.") Mississippi law strictly construes the standing requirements of judgment debtors and judgment creditors. *YD Lumber Co., Inc. v. Humphreys County*, 2 So. 3d 793 (Miss. Ct. App. 2009); *Mitchell v. TOWER AUTOMOTIVE OPERATIONS USA I, LLC*, Civil Action No. 3: 12CV403CWR-FKB (S.D. Miss. Feb. 12, 2014); *In re Estate of Necaise*, 126 So. 3d 49 (Miss. Ct. App. 2013); *MATTER OF THE CONSERVATORSHIP OF SMITH v. VANDEVORT*, No. 2015-CA-01798-COA (Miss. Ct. App. Aug. 8, 2017).

In sum, Mr. Handshoe (a) had no standing, at any time in 2016 or 2017 to bring the supplementary proceeding and any and all subsequent motions, and (b) had no injury since he has sworn under oath that he was indemnified by Slabbed New Media, LLC in the amount of $48,000, the amount of the judgment debt.[8] Moreover, the district court has on at least two occasions found that Mr. Handshoe and Slabbed New Media, LLC are distinct entities for purposes of lawsuits. See Case 1:12-cv-00090-LG-JMR Document 35 Filed 12/19/12, a fn. 2 ("Slabbed New Media, LLC is not a party to this action"); *Handshoe v. Perret*, Civil No. 1: 15CV382-HSO-JCG (S.D. Miss. Sept. 19, 2017) ("Nor is Plaintiff pursuing his own legal rights and interests in these Counts. Instead, Plaintiff is asserting the legal rights and interests of Slabbed New Media, LLC"). Also: *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016) ("On June 16, 2015, Slabbed filed a petition for Chapter 11 relief, signed by Douglas Handshoe as Member/Manager. Dkt. No. 1 at 3. Handshoe is the manager and sole member of Slabbed." "Handshoe and Slabbed are separate entities with separate assets and liabilities.").

## The Law Applied to Handshoe's Actions in Willfully Violating the Bankruptcy Stay

Handshoe's (and attorney Truitt's) conduct in filing a motion commencing a Rule 69(a)

_____

8   In fact, Handshoe claimed he was owed $500,000 in the Slabbed New Media bankruptcy.

whereby a bankruptcy creditor sought to surreptitiously possess the sole major asset of the bankruptcy estate for himself, and to have PL and Trout Point Lodge held in contempt through the tactical use of *de facto ex parte* motions. "The use of a motion for contempt as a negotiating tool, or to threaten and intimidate [...] constitutes an abuse of the process of this court which cannot be tolerated." *MTR PHOTOSOUND v. Gourdine*, 126 Misc. 2d 495, 482 N.Y.S.2d 993 (Sup. Ct. 1984). All this was done with no notice to the plaintiffs in 12-CV-90, no notice to the United States Trustee, and no notice to this court. Even after Handshoe was put on notice that Leary and his fellow plaintiffs received no notice, he persisted to ignore the requirements of service and notice. To say Handshoe was aware of the stay when he filed the Rule 69 motion is a withering understatement. The result was a vast waste of judicial resources. Moreover, Handshoe's conduct started well into the bankruptcy, long after the stay, and it persisted for over a year of illegal motions. all the time with Handshoe's knowledge he did not own the judgment debt and with knowledge of the Rule 69 proceeding's commencement during the stay, which made the entire proceeding a nullity. *In re Pawlowicz*, 337 B.R. 640 (Bankr. N.D. Ohio 2005).

As importantly, Handshoe and attorneys Truitt and G. Gerald Cruthird intentionally misrepresented facts to Judge Guirola through acts of both omission and commission, i.e. falsely stating Handshoe was the judgment creditor while intentionally omitting information about the bankruptcy and the transfer of the debt. An affirmative duty existed to (a) inform the court of all relevant facts and (b) as bankruptcy creditors, to stop all collection efforts relating to any bankruptcy estate property. As aggravating factors. they acted when Handshoe had no standing and Truitt was no longer admitted *pro hac vice* and failed to follow the local rules about a supervising attorney. A supervising attorney might have halted this conduct. They did so on an intentionally concealed *ex parte* basis. depriving Leary and his fellow plaintiffs of the most basic due process. Moreover. Handshoe and

22

Truitt "willfully violated the automatic stay by failing to act to nullify the Contempt Order" and Show Cause Order entered in violation of the stay in case 12-CV-90, "and they are, therefore, subject to sanctions for such willful violation." *In re Smith*, 180 B.R. 311 (Bankr. N.D. Ga. 1995).

All the while, Handshoe's unfruitful purported efforts at service relating to the illegally-obtained Show Cause Order were designed to harass. Handshoe caused a person who was actively concealing his identity. who was dressed like a biker gang member. to enter Leary's business for an unknown but obviously untoward purpose. causing mental distress.

Looked at in its totality, Handshoe's conduct over the judgment debt is particularly intentional, high handed. and oppressive. Already twice on notice that attorney Barnett was not giving notice to Leary and the other Plaintiffs, Handshoe persisted is filing motions without sufficient notice to them personally (cf. Leary declaration). He did not follow the usual Rule 69 procedures for discovery. and instead invoked a procedure engineered to result in contempt when combined with a lack of notice. See *IN RE GB HERNDON AND ASSOCIATES, INC.*, No. 10-00945 (Bankr. D.C. Dec. 27, 2011) (Explaining that under "Fed. R. Civ. P. 69(a) a judgment creditor is allowed to obtain discovery from the judgment debtor in the manner provided elsewhere in the Federal Rules of Civil Procedure, including under Rules 5(b). 30(a). and 37." and noting that "no subpoena or court order [is] required." collecting cases. The court found: "Civil contempt is not the appropriate sanction when a judgment debtor fails to appear incident to the judgment creditor's notice to take deposition.").

Handshoe may try to argue that he did not know he was violating the stay or that simply moving for a JDE did not violate the stay. and that the same is true of the Show Cause Order and contempt motion. This is belied by the cases listed above: *SEC v. Brennan,* 230 F.3d 65, 71 (2d Cir. 2000); *In re Blarney. Inc..* 53 B.R. 162. 164 (Bankr.D.Minn. 1985): *In re Atkins.* 176 B.R. 998 (Bankr. D. Minn. 1994): *In re Smith.* 180 B.R. 311 (Bankr. N.D. Ga. 1995): *In re Siskin.* 258 B.R. 554 (Bankr. E.D.N.Y.

2001); *In re Daniels*, 316 B.R. 342 (Bankr. D. Idaho 2004).

> A creditor's good faith belief that its intentional actions did not violate the automatic stay is not a defense to a § 362(k) action. *TranSouth Fin'l Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 688 (6th Cir. BAP 1999). This is true even if the creditor's belief is based on "a mistake of law or legal dispute regarding its rights." *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000); *Fleet Mortg. Group, Inc.*, 196 F.3d at 268-69 ("A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful.").

*IN RE SPRINGER*, No. 15-33254 (Bankr. W.D. Ky. Aug. 16, 2017).

In fact, Handshoe provably acted in bad faith in seeking the JDE and the contempt, as he used these illegally-obtained orders as weapons to attack Leary and his fellow plaintiffs in state court and the U.S. district court case 15-cv-382.

   This Court has original jurisdiction over this matter, there is no time limitation under 11 U.S.C. 362(k), and the order granting a JDE and all subsequent orders based on it are void, or at least voidable absent Handshoe having moved to validate his violation of the section 362(a)(3) stay with this court. As a pre-petition creditor[9] and as an injured individual, Leary has standing to bring this complaint. Leary has suffered actual damages in legal costs, time spent responding to Handshoe's abusive tactics, and in concrete emotional distress. Punitive damages are in order because Handshoe demonstrated a "willful disregard and disdain for both the bankruptcy process and [...] the automatic stay" and also because there was a tremendous "waste of judicial resources" due to his actions; *In re Adams*, 516 B.R. 361 (Bankr. S.D. Miss. 2014). Handshoe's acts were intentional, he acted in bad faith, and he acted "with actual knowledge that he was violating the federally protected right or with reckless disregard of

---

9   This court found regarding Leary's 425,000 Canadian judgment: "Although Slabbed listed the debt as contingent, unliquidated and disputed, this listing is improper because the debt has been reduced to judgment. *See In re Scott*, No. 06-80176-G3-13, 2006 WL 3166841, at *3 (Bankr. S.D. Tex. Nov. 1, 2006) ("A final, binding judgment is not required for a debt to be noncontingent or unliquidated. Similarly, the fact that a judgment is on appeal does not make the debt noncontingent or unliquidated. A judgment on appeal represents a liability which is fixed and noncontingent and remains a final, enforceable judgment until it is reversed, if ever, on appeal."). This foreign judgment, however, has been held unenforceable here under the SPEECH Act. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 496 (5th Cir. 2013). But the definition of a claim in bankruptcy is broad enough to include this debt; although the judgment cannot be enforced against any assets held in the United States, it is still valid as against any foreign assets whether currently possessed or later acquired." Final decision, fn. 4.

whether he was doing so." *In re Sanchez,* 372 B.R. 289, 315 (Bankr.S.D.Tex. 2007)." *Jones v. Wells Fargo Home Mortg., Inc.*, 489 B.R. 645 (E.D. La. 2013). This case is a poster child for "appropriate circumstances," based on Handshoe's "particular willfulness" and "heightened" awareness that what he was doing violated the bankruptcy stay he himself had initiated in a bankruptcy proceeding for Slabbed New Media in which he himself was a creditor; *In re Aponte*, 82 B.R. 738 (Bankr. E.D. Pa. 1988).

Leary prays that this court find Handshoe willfully violated the automatic stay, that this court award damages and costs, that this court award punitive damages for Handshoe's egregious conduct, that this court sanction Handshoe and attorney Truitt, and that the commencement of the Rule 69 supplementary proceeding violated the stay. Leary also prays for any additional relief this Court finds just given the circumstances and the law.

This the 5th day of January, 2019.

Respectfully submitted,

DR. CHARLES L. LEARY

appearing pro se

Charles L. Leary
308 5th Ave E
Vancouver, BC V5T 1H4
Canada

Telephone 802-440-0213
foodvacation@gmail.com

**U.S. Bankruptcy Court for the Southern District of Mississippi, Case MSSBKE 6:15-bk-50963**

### Declaration of Charles L. Leary

1. I am Charles L. Leary, a United States citizen currently legally resident in Nova Scotia.
2. I was a Managing Director and Recognized Agent of Trout Point since it opened in 2000 until January 30, 2018.
3. I hereby re-aver my Declarations made under penalty of perjury and filed in Case 15-cv-382, U.S. District Court for the Southern District of Mississippi as they relate to a violation of a bankruptcy stay ordered by this Court. *(ECF 203-2 through 20)* *CLL*
4. True copies of those declarations are attached hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _January 5, '19_ (date).

Charles L. Leary  (signature)

IN THE PROVINCE OF NOVA SCOTIA
COUNTY OF YARMOUTH

**U.S. District Court for the Southern District of Mississippi, Case 1:15-cv-00382-HSO-JCG**

### Declaration of Charles L. Leary
### supporting the Motion for Summary Judgment regarding
### bankruptcy stay violations and copyright infringement

1. I am Charles L. Leary, a United States citizen currently resident in Nova Scotia. I reside at 140 Trout Point Road, East Kemptville, Yarmouth County, Nova Scotia.
2. I have been a Managing Director and Recognized Agent of Trout Point since it opened in 2000.
3. I have never been served with any process, including show cause orders, in case 12-cv-90, U.S. District Court for the Southern District of Mississippi, during 2016 and 2017; I was also never served with any motion for a judgment debtor examination or to appear for a judgment debtor exam in 2016 in that case.
4. I have become aware of what might have been service attempts at Trout Point Lodge through talking to former temporary employees Sophia Gruber and Ulysse Martin, and I asked them to provide declarations about what occurred before they left employment. Neither was ever authorized to accept service on my behalf and neither was a manager, officer, or director of my business. They were both temporary foreign workers. I have not seen Ulysse Martin since Don Acker visited Trout Point Lodge.
5. I was a judgment creditor in the Chapter 11 bankruptcy of Slabbed New Media, LLC filed in the U.S. Bankruptcy Court for the Southern District of Mississippi. Douglas Handshoe was also a creditor, claiming he was owed $500,000 in a document filed on October 12, 2015. See Exhibit "Q". That bankruptcy case was closed by the court in October, 2016.
6. I have personal knowledge that Mr. Handshoe, who was Slabbed New Media's sole member, caused the LLC to file a suggestion of bankruptcy motion in the case Yount v. Handshoe, et. al. in Louisiana's 24th Judicial District Court case no. 736-680. I know that case was stayed during the pendency of that bankruptcy. Attached hereto as Exhibit "R" is the motion and Notice of Bankruptcy Case Filing in that Louisiana case by Slabbed New Media, LLC.
7. Attached hereto as Exhibit "A" is a true copy of a motion for a judgment debtor exam filed by Mr. Handshoe in the U.S. District Court for the Southern District of Mississippi, case no. 12-cv-90. It was filed before the bankruptcy case was dismissed and closed and while a bankruptcy stay was in place.
8. I was informed by my attorney Gary Thrash that Douglas Handshoe was served with a Writ of Execution relating to a $180,000 money judgment from Nova Scotia Supreme Court, enrolled in Hancock County Circuit Court, on May 15, 2017. Mr. Handshoe's own witness, Sheila Cruthird, has stated in an affidavit in this case (ECF 180-1) that execution was attempted at that time.
9. As part of a motion for original discipline in 2016, I put Mr. Handshoe and his attorney Mr. Truitt on notice that none of the plaintiffs in case 12-cv-90 were receiving notices via attorney M. Judith Barnett. Mr. Perret and I both appeared and filed *pro se* motions in case 12-cv-90 on June 9, 2016 (ECFs 70 & 72) and were never actually represented by Ms. Barnett. Her enrollment was her error and she never gave us notices of any motions in that case or worked on the case, which was closed at the time she enrolled in error.
10. It is my belief that faced with possible execution on my $180,000 judgment, Mr. Handshoe confected a situation where he filed a motion for a judgment debtor exam, did not send notice to

the plaintiffs in Canada knowing that Ms. Barnett would not pass on notice to the plaintiffs. He knew Ms. Barnett was no longer working for us and I informed him she was not passing on notices. He knew Mr. Perret and I were *pro se*. He therefore knew it to be highly likely we would not oppose the motion and would not show up for the subsequent debtor exam. He argued Mississippi law as the basis for the debtor exam, which statute states that contempt is possible if a debtor does not appear for an exam. As I have not received subsequent notices or orders in that case, I believe there was a continuing pattern of such conduct of intentionally not giving notice or effecting proper service.

11. Mr. Handshoe has used contempt or possible contempt repeatedly in briefs he has recently filed in state court (Hancock County Circuit Court) and in this U.S. district court in this case. I believe he is using that situation he created to embarrass me, to discredit me, and to use it as a negotiating tactic or tool. Mr. Cruthird also sent me a "courtesy copy" of a motion for continuance in 12-cv-90 and cc'd Judge Guirola's chambers in September, 2017. He had never before emailed anything to me regarding the supplemental proceeding to me. I have never seen anyone cc the judge on such communications between parties in any court case I have been involved with.

12. I have suffered a lot of stress and emotional distress since Mr. Handshoe began using the orders he obtained from the U.S. district court in the FRCP 69 post-judgment proceeding he started. This has included increased high blood pressure. On medical advice from Dr. Zia Rahman I have doubled my daily dosage of my blood pressure medication Coversyl from 2 mg to 4 mg since learning of Handshoe's supplementary proceeding tactics and their results.

13. I have also suffered from sleeplessness, often waking up extremely early in the morning-- like 4 or 5 am—worried about Handshoe's actions in the supplemental proceeding. I often cannot get back to sleep. This has caused me to be tired and be less alert and able to focus.

14. I also suffer from headaches and the occasional feeling of heart palpitations. I often find it hard to concentrate on other important matters. This is all related to the supplemental proceeding.

15. Supervising attorney in case 12-cv-90, Mr. Cruthird, did not sign the motion for a judgment debtor exam filed by Mr. Truitt on behalf of Mr. Handshoe. Mr. Truitt appeared in that case *pro hac vice*, and the case closed in December, 2012. Mr. Truitt never applied to be re-admitted before filing the debtor exam motion.

16. As Managing Director of Trout Point Lodge, I have personal knowledge that in September, 2017, someone named Stephen Kennedy, who was hired by Mr. Handshoe, made a room reservation at Trout Point Lodge. Kennedy is a civil process server (licensed civil constable) located in Halifax, Nova Scotia. I know who Mr. Kennedy is as I have used his services in the past.

17. Instead of Mr. Kennedy appearing for the room reservation, someone who verbally identified himself as "Bob Watson" showed up alone. He was dressed like a biker gang member, wearing a leather vest with no shirt on underneath. He refused to present identification or a credit card when asked. Trout Point is a 5-star wilderness resort. "Bob Watson" was a very unusual and disturbing guest based on his appearance and his strange behavior. It is a legal requirement in Nova Scotia that hotel guests present identification.

18. "Bob Watson" told two Trout Point Lodge staff members—Shaheen Gonbaldi and Ulysse Martin—that he knew Vaughn Perret and I, and that he wanted to talk to us. When they insisted that he had to provide ID and a credit card, he suddenly left without settling his bill.

19. Bob Watson's appearance at Trout Point Lodge and his behavior, as well as the strange circumstances surrounding his presence at my place of business, caused me a great deal of concern and stress, including concern for the physical safety of my employees, my business, Mr. Perret, and myself. Trout Point Lodge is in a very remote location, and based on personal experience it takes 25-45 minutes for emergency services or police to arrive after a 911 call. Mr.

Handshoe submitted a brief in case 12-cv-90 in which he said that he had attempted service in that case as late as September 17, 2017. That service attempt was "Bob Watson," but I believe his dress and his conduct was also meant to convey a threat of violence or disruption of my business. This has caused me substantial further distress.

20. I checked on Bob Watson's status as a civil constable (process server) with the Nova Scotia Department of Justice. Justice official Mr. Michael Balcolm informed me that "Bob Watson" is not a licensed civil constable.

21. Since learning of Handshoe's tactics with the post-judgment proceeding, I have incurred PACER expenses from that service that stem from researching the aid-of-execution proceeding initiated during the bankruptcy stay of $241.60 in the months of October, November, and to date in December 2017. I have also had to expend 82 hours of personal time working on researching and writing briefs related to the stay violation, including in this case. As a researcher and consultant I have in the past been paid U.S. $225/hour for my time. I also incurred over $75 in costs getting transcripts of hearings in case 12-cv-90.

## Copyright Infringement

22. In November, 2017, I reviewed the web site at slabbed.org. It is purportedly published by Slabbed New Media, LLC, with Mr. Handshoe as the publisher, as he repeatedly states in his Third Amended Complaint for Damages. Mr. Handshoe, identified by name, is the author of the vast majority of the content on slabbed.org.

23. Slabbed.org continues to publish four photographs that were the subject of a copyright infringement lawsuit in Nova Scotia against Handshoe that concluded in a judgment against him on February 14, 2014. These photographs are stored at locations on slabbed.org servers like /wp-content/uploads/2013/04 and /wp-content/uploads/2012/01. See the attached exhibits "B" and "C," which are true copies of the content of slabbed.org. In addition, slabbed.org is also publishing without permission a fifth photograph not part of any earlier litigation, which is a photograph or Trout Point Lodge and its firepit taken by professional photographer William Taylor. Mr. Taylor was paid for the transfer of rights in this photograph.

24. The five photographs currently appear in slabbed.org posts and are publicly available online. See attached examples, exhibits "D", "E", "F", "G", "H", "J". The photograph taken by Marilyn Smulders appears in its entirety in the YouTube video published on Douglas Handshoe's account, so that it could be republished on slabbed.org. A screen shot of that photograph appearing in the video is attached as Exhibit "P." As I have also earlier declared the entirety of the photograph of Vaughn Perret and I taken by Kara Crowell also appears in its entirety in the same YouTube video.

25. Neither I nor Trout Point Lodge have ever given Handshoe or Slabbed New Media permission or license to publish, copy, or distribute these five photographs.

26. I was assigned the United States rights in these and other photographs in September, 2016. See attached exhibit "I". I provided this copyright assignment to Mr. Handshoe in my initial disclosures in October, 2017, but he persists in publishing the photographs knowing that I have the exclusive U.S. rights in them.

27. These photographs were valuable for the promotion and marketing of my business Trout Point Lodge. One photograph of Vaughn Perret and myself also helped celebrate our position as official delegates to the National Geographic Society Geotourism Summit in Washington, D.C. in 2010, as well our acceptance of an award at that event on behalf of Trout Point Lodge for being one of 10 worldwide finalists in the 2009 National Geographic/Ashoka Geotourism Challenge.

28. The goodwill and value of those photographs is being horribly sullied by Mr. Handshoe's infringing use of them to publish false criminal allegations about us. He uses publication of them on slabbed.org and YouTube to personally identify us to third parties and the general

public as criminals, which is untrue.

29. I checked with the United States Copyright Office via its official web page. I learned that Mr. Handshoe registered copyright in the YouTube video at issue in Count 5 of his Third Amended Complaint. See Exhibit "K". That video uses the image of Vaughn Perret, Daniel Abel, and I authored by Marilyn Smulders as well as the photograph of Mr. Perret and I with our dog authored by Kara Crowell, to which I own the U.S. rights.

30. The original photograph assigned to me by Ashoka appears in Exhibit "L"; the original photo authored by Kara Crowell appears in Exhibit "M"; the original photo authored by Vaughn Perret appears in Exhibit "N"; the original photo authored by Marilyn Smulders appears in Exhibit "O"; the original photo authored by Mr. Taylor appears in Exhibit "S".

31. I have compared the original photographs to the photographs published on Slabbed.org and on YouTube. The five original digital images are the same as the images copied and then published by Mr. Handshoe to slabbed.org and in the YouTube video described in Count 5 of Handshoe's Third Amended Complaint, with perhaps minor cropping of the Smulders photograph. Again, neither Mr. Handshoe nor Slabbed had permission to use these photographs in any way at any time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___12/11/17___ (date).

Charles L. Leary  (signature)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET and
CHARLES LEARY,

               Plaintiff,     Civil Action No.: 1:12-CV-90LG-JMR

v.

DOUG K. HANDSHOE,

               Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION TO EXAMINE JUDGMENT DEBTOR

NOW INTO COURT, comes the undersigned Jack E. Truitt, attorney for defendant, Doug

K. Handshoe, who respectfully represents that:

### I.

Mover is the judgment creditor of debtors, Trout Point Lodge, Ltd., Vaughn Perret, and

Charles Leary, in the amount of $48,000 with interest thereon at the legal rate from date of

judgment, as more fully set forth in the judgment appearing in the record, which has not been paid

or satisfied. The time for appeal of this judgment has run and no appeal has been taken. A certified

copy of the judgment is attached and incorporated as "Exhibit A."

### II.

Mover desires to examine the judgment debtor on matters pertaining to the judgment

debtor's property, pursuant to Miss. Code. Ann. § 13-1-261, et seq., to have the judgment debtors

produce, in court, certain of their books, papers, and documents, which are in judgment debtors'

Ex. A

15-50963-KMS   Dkt 138   Filed 01/08/19   Entered 01/08/19 08:50:54   Page 32 of 34
Case 1:15-cv-00382-HSO-JCG   Document 203-3   Filed 12/14/17   Page 2 of 4
Case 1:12-cv-00090-LG-JMR   Document 77   Filed 08/17/16   Page 2 of 4

possession and which are material to this cause; and to examine the judgment debtors personally in relation to the above matters and documents, namely:

a. Monthly statements; passbooks; certificates of deposit; canceled checks; deposit and withdrawal receipts for any account at any bank, brokerage firm, homestead, or financial institution of any type which maintained an account in the name of the judgment debtor, individually or jointly with any other person, or any account against which the judgment debtor has or had the right to make withdrawals or sign checks.

b. Any financial statements prepared in the last 10 years, including statements prepared for lending agencies, etc.

c. Receipts, contracts, records, and other documents showing the ownership, sales, donations, mortgages, and other transfers of property owned by, purchased by, or sold by judgment debtor, including real estate, automobiles and other vehicles, furniture, and all other property owned by the judgment debtor.

d. Receipts for rent paid on judgment debtor's properties.

e. Receipts for payments of amounts owed by defendant on accounts, mortgages, notes, or other indebtedness.

f. Copies of income tax returns, both state and federal, of the judgment debtor for the last five years.

g. All records of earnings.

### III.

All of the preceding items are limited to that period of time beginning January 1, 2016, and extending to the present date, including all documents previously made that were continuing in effect during that time.

### IV.

By the above documents and examination, mover intends to prove that the judgment debtors own property subject to execution.

Wherefore, mover prays that mover have the privilege of examining records of Trout Point Lodge, Ltd., Vaughn Perret, and Charles Leary, judgment debtors, at a time and place to be fixed by this Court and that the judgment debtors be summoned and commanded to produce in court the papers and documents described above.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

*s//Jack E. "Bobby" Truitt*
_____
JACK E. TRUITT, BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for defendant, Douglas K. Handshoe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all

counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or

by facsimile and/or by electronic means on August 17, 2016.

*s//Jack E. "Bobby" Truitt*